IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

v.                                                              Case No.:  5:20cr28-MW/MJF

MARGO DEAL ANDERSON, et al.,

    *Defendants*.
_____/

### ORDER ON MOTIONS TO DISMISS

Arguing that it improperly alleges multiple crimes in individual counts—*i.e.*, that it's duplicitous—Defendants Finch and Anderson move to dismiss the second superseding indictment. ECF No. 225; ECF No. 226. The Government responds in opposition. ECF No. 238 at 1–15. This Court finds that the second superseding indictment's conspiracy count is infirm. The remaining counts, however, are valid. Thus, Defendants' motions are **GRANTED in part** and **DENIED in part**.

I

This Court starts with the relevant background. This Court has confronted this issue before, dismissing the first superseding indictment's conspiracy count as duplicitous. ECF No. 185. Because that order looms large over the current motions, this Court begins by describing its previous order.

The first superseding indictment alleged that Defendants participated in a conspiracy involving these five "projects."

- **17th Street**: Finch bribed Anderson (the mayor) and Barnes (a city commissioner) to support his projects with the City of Lynn Haven. In addition, Finch obtained one of those projects, the 17th street project, through a bid rigging agreement with other companies—including Company A.

- **ECS**: Erosion Control Specialists (ECS) bribed Michael White (the city manager), Anderson, and Albritton (the city attorney) and received hurricane cleanup and trash pickup contracts in return. ECS also submitted false invoices and, when those invoices were paid, paid kickbacks to Albritton.

- **Debris Disposal**: Unbeknownst to the City, Company A employed Albritton. Albritton directed city contractors to use Company A's property to dispose of debris. After a meeting with Anderson, Finch, White, and the owner of Company A, Anderson directed companies C and D to dispose of debris at one of Finch's properties. Anderson also vetoed White's plan to designate city-owned property as a disposal site and secured state government support for a plan to use Finch's site. At the same time, Anderson accepted things of value from Finch.

- **WorldClaim**: WorldClaim, a public adjusting firm, approached Individual A, a contract engineer with the City, with a proposal: help us get a contract assisting the City with its hurricane claims and we will give you a percentage of whatever we recover. Individual A, in turn, approached Anderson and

White, offering free services from WorldClaim. Anderson and White signed an agreement with WorldClaim using Anderson's post-hurricane emergency powers. WorldClaim, in turn, provided them free or reduced services.

- **Rebuild**: After Hurricane Michael, the City had to rebuild many of its facilities. Finch bribed Anderson for inside information and to exert pressure on city officials to aid Finch in obtaining the rebuild project at a significantly higher cost than the City would pay through its already-planned rebuild project.

*See id.* at 3–4.

After a hearing, this Court held that the 17th street, debris disposal, and rebuild projects were one conspiracy, but that the ECS and WorldClaim projects were separate conspiracies. *Id.* at 5–6. Thus, this Court dismissed the conspiracy count as duplicitous. *Id.* at 7.

Responding to that ruling—among others—the Government sought, and the grand jury returned, a 26-count second superseding indictment. The new indictment begins by laying out essentially the same factual allegations as the previous indictment, describing in chronological order each of the five "projects" set out above. *See* ECF No. 215 ¶¶ 1–122.

Incorporating those factual allegations, Count 1 charges both Anderson and Finch with conspiracy to commit honest services wire fraud:

> The manner and means of the conspiracy were that the defendant and conspirators used **ANDERSON**'s public official position as the Mayor of Lynn Haven . . . to offer, give, solicit, receive, agree to accept, and accept things of value from **FINCH**, which were offered and provided by **FINCH** to **ANDERSON** . . . with the intent that [she] would be influenced in the performance of official acts. **ANDERSON** agreed to accept and did accept things of value from **FINCH** with the intent that she would be influenced in the performance of official acts related to specific matters, to wit, **FINCH**'s business interests before, including the 17th Street project, projects under the ½ Cent Surtax contract, and City business for hurricane recovery, as specific opportunities arose.

ECF No. 215 ¶ 125.

The remaining 25 counts charge Finch and Anderson with honest services wire fraud (Counts 2–14, 20–24), theft or bribery concerning programs receiving federal funds (Counts 15–17), wire fraud (Counts 18–19), and making false statements in a matter within the executive branch of the government (Counts 25–26). Excluding Count 26, each of the other 25 counts incorporate all 122 paragraphs of factual allegations. *Id.* ¶¶ 127, 131, 133, 135, 137, 140, 143.

## II

This Court first address Defendants' main argument; namely, that Count 1 is duplicitous because it charges multiple conspiracies in one count.

Defendants contend that Count 1 is duplicitous because it once again charges all five "projects" in one conspiracy count. ECF No. 225 at 2; ECF No. 226 at 7. Specifically, Defendants argue that "the Second Superseding Indictment still lacks

facts tying the alleged Erosion Control Services and World Claim schemes to one another and to the [17th street, debris, and rebuild] schemes." ECF No. 226 at 7.

The Government replies that "[n]either Count 1 nor any other count charges either Defendant with conspiracy related to WorldClaim or ECS. And only Defendant Anderson is charged substantively with respect to those matters in other segregated counts." ECF No. 238 at 12. Put another way, the Government argues that Count 1 only charges conspiracy as to the 17th street, debris disposal, and rebuild projects.

If true, that would solve the problem. But this Court cannot accept the Government's argument.[1] Count 1 incorporates by reference at least 27 paragraphs that deal solely with either ECS or WorldClaim. ECF No. 215 ¶ 127; *id.* ¶¶ 58–59, 61–63, 67–69, 77, 81, 83–89, 92–93, 97, 99–100. Initially, then, it appears that Count 1 again encompasses ECS and WorldClaim.

Pushing back, the Government claims that paragraph 125 fixes any problem caused by Count 1's wholesale incorporation of all 122 paragraphs of factual allegations. Not so. Paragraph 125 alleges that Anderson agreed to be "influenced in the performance of official acts related to specific matters . . . *including* the 17th

---

[1] In so stating, this Court fully accepts the Government's representation that it drafted the second superseding indictment *intending* to fix this issue. But intent is not enough. That said, this Court is not elevating form over function. As explained below, the second superseding indictment's indeterminacy could have serious real-world consequences.

5

Street project, projects under the ½ Cent Surtax contract, and City business for hurricane recovery, as specific opportunities arose." *Id.* ¶ 125 (emphasis added). "The participle *including* typically indicates a partial list." *Include*, Black's Law Dictionary (7th ed. 1999). So paragraph 125 is most naturally read as containing a non-exhaustive list of schemes. No wonder Anderson's lawyers "did not read and understand Paragraph 125 to . . . limit the scope of the charged conspiracy." ECF No. 244 at 2.

One might ask what other "specific matters" paragraph 125 refers to. Because Count 1 incorporates dozens of paragraphs of factual allegations about the ECS and WorldClaim schemes, it is most reasonably read as referring to those schemes. Thus, this Court finds that Count 1 again groups all five "projects" together as one conspiracy. Count 1 is thus duplicitous.

Even assuming, alternatively, that one could also fairly read paragraph 125 as limiting the scope of the charged conspiracy, Count 1 is still facially insufficient. "Generally, an indictment is sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which he must defend and 2) enables him to enter a plea which will bar future prosecution for the same offense." *Belt v. United States*, 868 F.2d 1208, 1211 (11th Cir.1989) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

Count 1 falls short because it leaves the charged conspiracy's scope ambiguous, combining an open-ended list of matters within the conspiracy with dozens of paragraphs of allegations unrelated to the matters specifically enumerated on the list. Thus, Count 1 does not fairly inform Defendants of the charges against which they must defend. For the same reason, the superseding indictment also denies Defendants the ability to enter a plea that would bar future prosecution, as it is unclear whether Defendants—should they enter a plea—would have pled guilty to conspiracy as to the ECS and WorldClaim schemes.

For these reasons, Defendants' motions to dismiss are **GRANTED** as to Count 1 of the second superseding indictment.

### III

Defendants also argue that "[t]he incorporation of paragraphs 1 through 22 in each count creates . . . similar duplicity and related Fifth Amendment problems." ECF No. 226 at 4; ECF No. 225 at 14 n.10.

As in the conspiracy context, "the key issue to be determined is what conduct constitutes a single offense." *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997). Starting with wire fraud, "the unit of prosecution is not each individual fraudulent statement, or even each individual scheme, but rather each individual . . . wire transmission." *United States v. Parker*, No. 1:05-CR-0045 ODE, 2006 WL 8443231, at *2 (N.D. Ga. Oct. 3, 2006), *report and recommendation adopted*, No.

1:05-CR-045-ODE, 2007 WL 9734884 (N.D. Ga. Apr. 13, 2007); *see also United States v. Williams*, 527 F.3d 1235, 1243 (11th Cir. 2008) (explaining that "§ 1343 punishes not the creation of a scheme to defraud, but each execution of that scheme by use of interstate wire transmissions"). Here, each wire fraud count charges one wire transmission. Thus, they are not duplicitous.

Turning next to theft or bribery concerning programs receiving federal funds, courts have found "that each payment is a separate violation." *United States v. Langford*, CR-08-CO-245-S, 2009 WL 10671369, at *7 (N.D. Ala. July 2, 2009), *report and recommendation adopted*, CR-08-CO-245-S, 2009 WL 10671793 (N.D. Ala. July 28, 2009). Counts 15 and 16 allege only that Finch corruptly provided a motorhome to Anderson. *See* ECF No. 215 ¶¶ 131–34. Indeed, these counts are more focused than Count 1. *See id.* ¶ 134 (alleging that Finch "did corruptly give, offer, and agree to give a thing of value, to wit, the Motorhome"). Counts 15 and 16 are not duplicitous.

Finally, the false statement Counts are not duplicitous. "The unit of prosecution under § 1001(a)(2)" is "a single false statement." *United States v. Craigue*, 19-CR-142-LM, 2020 WL 3545156, at *2 (D.N.H. June 29, 2020). Each false statement count describes the single statement charged in great detail. ECF No. 215 ¶¶ 145a–45b, 146a–47c. Thus, the false statement counts are not duplicitous.

IV

An indictment's primary purpose is to "inform the defendant of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 767 (1962). While the vast majority of counts fulfill that purpose, Count 1 again fails to do so. And so this Court must again dismiss it.

In sum,

**IT IS ORDERED**:

1. Defendants' motions to dismiss, ECF No. 225 and ECF No. 226, are **GRANTED in part** and **DENIED in part**.

2. Count 1 of the second superseding indictment is **DISMISSED without prejudice**.

**SO ORDERED on June 13, 2022.**

s/Mark E. Walker<br>
**Chief United States District Judge**