UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Case No. 5:20-CR-28-MW/MJF

UNITED STATES OF AMERICA

v.

JAMES D. FINCH,

        Defendant.

_____/

### DEFENDANT FINCH'S MOTION TO DISMISS COUNTS 1–14
### OF THE SECOND SUPERSEDING INDICTMENT

Defendant James D. Finch by and through undersigned counsel, moves pursuant to Federal Rule of Criminal Procedure 12 to dismiss Counts 1–14 of the Second Superseding Indictment as the counts do not sufficiently allege legally cognizable claims of "honest services fraud" violations.  As a result, the counts should be dismissed.

## I.    Procedural Background

On March 16, 2021, the Grand Jury in Tallahassee returned a 43-count Superseding Indictment adding James Finch and former Lynn Haven City Commissioner Antonius Barnes.  ECF No. 64.  The Superseding Indictment incorporated much of the same confusing, legally flawed, inaccurate language from the initial Indictment, which the Court had previously criticized.  *See* ECF No. 60.

The Superseding Indictment charged Margo Anderson, Adam Albritton, James Finch, and Antonius Barnes with a single conspiracy count for engaging in honest services fraud, alleging violations of 18 U.S.C. §§ 1343, 1346, and 1349.  The "Manner and Means" section of Count 1 covered a period of 66 months and included over 100 paragraphs.  It was broken down into 9 subheadings—each containing different facts of the alleged "overall" conspiracy of honest services fraud.  Each section involved a different set of facts, people, circumstances, and time frames.  Thematically, the charging language attempted to first describe a fraud associated with certain post-hurricane cleanup and involving a fraudulent invoicing scheme between Erosion Control Specialist ("ECS") and Michael White, the City of Lynn Haven's former City Manager.  The allegations eventually transformed into an attempt to criminalize repeated complaints by Finch about the high cost of proposed construction projects.[1]

On June 7, 2021, respective counsel for Anderson, Albritton, and Finch independently challenged multiple counts of the Superseding Indictment, arguing that the conspiracy count violated the well-settled doctrine of duplicity.  Counsel

---

[1] In retrospect, it is now clear from the evolution of this case that the state and federal government first "investigated" the ECS hurricane-related false invoice case.  This occurred after state authorities initially arrested City Manager Michael White for assaulting his wife with a City-issued handgun.  Apparently, the White cell phone contained incriminating text messages leading to additional arrests and pleas.  A federal indictment followed, attempting to go both forward and backward in time, forcing a host of often unrelated events into a single, continuous conspiracy.

further demonstrated that other substantive counts were insufficiently pled.  ECF

Nos. 131, 138, 143, 149, 155.  After oral argument over multiple days and careful

consideration, the Court dismissed Count 1 of the Superseding Indictment on August

19, 2021.  ECF No. 185.  Following the dismissal of Count 1, and with leave of

Court, the government expressed a desire "to take another stab at Count—at the

conspiracy allegations" and figure out "how to charge them in light of the Court's

ruling," for the third time in this case.  ECF No. 187, Hr'g Tr. at 97.

On November 16, 2021, the government obtained a 26-Count Second

Superseding Indictment, again charging a virtually identical duplicitous honest

services conspiracy count.  ECF No. 214.  The remaining counts charge Defendants

Finch and/or Anderson with substantive honest services wire fraud (Counts 2–14,

20–24), theft or bribery concerning programs receiving federal funds (Counts 15–

17), wire fraud (Counts 18–19), and making false statements (Counts 25–26).  *Id.*

The government incorporated all 122 paragraphs of factually duplicitous allegations

in each of Counts 1–25.  *Id.* For the reasons detailed below, Counts 1–14 of the

Second Superseding Indictment must be dismissed.

## II.    Standard of Review

Rule 12(b) of the Federal Rules of Criminal Procedure provides defendants

with the ability to challenge an indictment for defects, like failure to state a legally

cognizable offense.  Fed. R. Crim. P. 12(b)(3)(B)(v).  District Courts ruling on such

pretrial motions must review "the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). A sufficient indictment must "contain[] the elements of the offense charged and fairly inform[] the defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "A grand jury indictment must set forth ***each essential element*** of an offense in order for a resulting conviction to stand." *United States v. Poirier*, 321 F.3d 1024 (11th Cir. 2003) (emphasis added). Even when an indictment "tracks the language of the statute, 'it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Schmitz*, 634 F. 3d 1247, 1259-60 (11th Cir. 2011) (quoting *United States v. Jordan*, 582 F. 3d 1239, 1245 (11th Cir. 2009); *United States v. Bobo*, 344 F. 3d 1076, 1083 (11th Cir. 2003)). Accordingly, dismissal is appropriate "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

## III.   Evolution of the Honest Services Statute

The only consistent theme in the Second Superseding Indictment is the attempted widespread reliance on the "honest services" statute, making it a crime to

"deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Application of the honest services statute, however, has been the subject of harsh criticism, ultra-strict construction, and limiting instructions by the United States Supreme Court for the last several decades.  This criticism and strict construction are wholly justified considering the inherent ambiguity as to what constitutes an "intangible right of honest services."   Considering the statute's vagueness, the United States Supreme Court has repeatedly reversed convictions when the allegations are not precisely and carefully drawn.

### A.    *McNally v. United States,* 483 U.S. 350 (1987)

Prior to the enactment of 18 U.S.C. § 1346, the Supreme Court held in *McNally v. United States*, 483 U.S. 350 (1987), that federal fraud statutes could not be used to criminalize behavior on the ambiguous standard of an intangible right to honest services.  The *McNally* Court held that any attempt to criminalize honest services fraud based on the general federal fraud statutes was unconstitutional. *McNally* also warned that allowing such a prosecution on vague standards would "involve[] the Federal Government in setting standards of disclosure and good government for local and state officials." *Id.* at 360.

After *McNally,* Congress enacted 18 U.S.C. § 1346, attempting to salvage the theory of "honest services fraud."  Despite these modifications, however, the statute continued to suffer from repeated scrutiny by the Supreme Court, resulting in high

Court reversals due to a host of constitutional legal infirmities.

> **B.**   ***Skilling v. United States*, 561 U.S. 358 (2010)**

After *McNally* and the enactment of 18 U.S.C. § 1346, the Supreme Court again rejected a broad honest services fraud theory of criminal liability in *Skilling v. United States*, 561 U.S. 358 (2010).

In *Skilling*, Jeffrey Skilling, the one-time CEO of Enron, was convicted of (among other things) wire fraud on the theory that he deprived the company and its shareholders of his honest services by manipulating financial results and making false and misleading statements about the company's performance to "prop up Enron's short-run stock prices." *Id.* at 368-69. On appeal, the U.S. Court of Appeals for the Fifth Circuit upheld Skilling's honest services fraud conviction, rejecting Skilling's arguments that his conduct could not fall within the meaning of § 1346 because the conduct "was in the corporate interest and therefore was not self-dealing." *Id.* at 545. Skilling then argued to the Supreme Court that the honest services statute should be struck down as unconstitutionally vague. *Id.* at 402.

The Supreme Court determined that the attempt in that case to criminalize the deprivation of an "intangible right of honest services" was still unconstitutional in large measure. Specifically, *Skilling* held that it would be unconstitutional to apply such a vague standard, which was advocated by the government. *Id.* at 408.

*Skilling* suggested that the statute should be applied rarely, if at all. In

following the principle of judicial restraint, however, the Court construed the statute narrowly to apply only to "bribes and kickbacks." *Id.* at 409; *see also Black v. United States*, 561 U.S. 465, 471 (2010) ("We decided in *Skilling* that § 1346, properly confined, criminalizes only schemes to defraud that involve bribes or kickbacks.").

Skilling also specifically excluded large categories of conduct from the scope of § 1346, including several of the very theories alleged and relied upon in this case. For example, here, there are allegations of self-dealing and failure to disclose conflicts of interest. Even if we accept these allegations as true for purposes of this motion (which they are not), *Skilling* concluded that self-dealing and conflicts of interest are ***not*** appropriate targets of an honest services prosecution. *Skilling*, 561 U.S. at 410-11 (rejecting the government's request to include "the taking of official action by the employee that further his own undisclosed financial interests" within § 1346's compass); *see also id.* (holding that honest services fraud does not encompass conduct wider ranging than the paradigmatic cases of bribes and kickbacks and declaring, "we resist the Government's less constrained construction absent Congress' clear instruction otherwise.").

In short, the Supreme Court's decision in *Skilling* makes clear that honest services mail or wire fraud must involve "offenders who, in violation of a fiduciary duty, participate[] in bribery or kickback schemes." *Id.* at 407. In light of this holding, Circuit and District Courts must consider the (1) vitality of the "limiting

principles" adopted prior to *Skilling*, (2) source and scope of fiduciary duties, and (3) definition and application of the terms "bribery" and "kickbacks."

**C.    *McDonnell v. United States*, 579 U.S. 550 (2016)**

In 2016, the Supreme Court yet again narrowed the application of the honest services statute.  In *McDonnell v. United States*, 579 U.S. 550 (2016), the Court reviewed the honest services statute for vagueness.

In *McDonnell*, the former Governor of Virginia, Bob McDonnell, began to accept gifts from a wealthy businessman who was courting McDonnell to help with his dietary supplement company.  *Id.* at 555.  In short, McDonnell and his wife, Maureen, needed financial help and the businessman promised to alleviate their debt with loans and more.  In return, it was *implied* that McDonnell would help the businessman get FDA approval for his dietary supplement by trying to persuade Virginia public universities to do the necessary research so the company would not have to pay for it.  *Id.* at 555-61.  In exchange, McDonnell and his wife received more than $175,000 in loans, shopping sprees, vacations, and other gifts from the businessman, who also even paid for McDonnell's daughter's wedding.  *Id.*

Federal prosecutors indicted McDonnell on charges of honest services fraud and Hobbs Act extortion because they believed that the businessman bribed McDonnell.  The parties stipulated that terms within both the honest services fraud and the Hobbs Act extortion statutes would be defined by reference to a federal

statute prohibiting bribery: 18 U.S.C. § 201.  *McDonnell*, 579 U.S. at 562.  The jury convicted McDonnell on the honest services fraud and the Hobbs Act extortion charges. *Id.* at 564.

Following the verdict, McDonnell moved to vacate his convictions on the ground that the jury instructions "were legally erroneous because they (i) allowed the jury to convict [him] on an erroneous understanding of 'official act,' and (ii) allowed a conviction on the theory that [he] accepted things of value that were given for future unspecified action."  *Id.* at 565.  In addition, McDonnell moved for acquittal on the basis that there was insufficient evidence to convict him, and that the Hobbs Act and honest services statute were unconstitutionally vague.  *Id.*  His motions were denied, and the U.S. Court of Appeals for the Fourth Circuit affirmed the convictions on appeal.  *Id.*  The United States Supreme Court, however, reversed.

Writing for a ***unanimous*** Court, Chief Justice Roberts rejected the government's contention that the definition of "official act" within § 201(a)(3) included "any decision or action, on any question or matter, that may at any time be pending, or which may by law be brought before any public official, in such official's official capacity."  *Id.* at 566.  Instead, the Court read both "question or matter" and "decision or action" more narrowly.

The Court rejected the government's expansive interpretations of "official act" because it raised significant constitutional concerns.  *Id.* at 576 (rejecting broad

interpretations so that "ordinary people can understand what conduct is prohibited" and to discourage "arbitrary and discriminatory enforcement").  The Court also rejected the government's expansive interpretations of "official act" because it raised significant federalism concerns.  *Id.* (supporting a state's sovereignty to define the structure of its own government and regulate permissible scope of interactions between officials and constituents).  The Court declined to construe the bribery statute in a manner that was ambiguous and involved "the Federal Government in setting standards of good government for local and state officials." *Id.* (citing *McNally*, 483 U.S. at 360).

*McDonnell* was yet another landmark decision, substantially narrowing the honest services statute and raising questions as to prior decisions.  *McDonnell* took the analysis beyond where it had been in *Skilling,* requiring not only allegations and a finding of a strict *quid pro quo* exchange, but also constricting the definition for the required element of an "official act."

*McDonnell* also made clear that a necessary component to be exchanged for a thing of value in a bribery arrangement is an (alleged) *agreement* by the public official to be influenced in performing an official act.  *Id.* at 572.  While the public official need neither perform nor even intend to perform an official act, the official must, at a minimum, "agree[] to do so." *Id.*  In addition to the necessary allegation of an agreement, *McDonnell* also requires that the indictment language contain

express allegations of an agreed *quid pro quo*.  *Id.* at 572-73 ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an official act at the time of the ***alleged quid pro quo***." (emphasis added)).

## IV.   The Second Superseding Indictment falls well short of the requirements of *Skilling* and *McDonnell*.

### A.   No Specificity of any Alleged Promise(s)

First, *McDonnell* explained that honest services fraud requires that an official ***promise*** to make a decision or take an action on a question, matter, cause, suit, proceeding, or controversy.  *Id.* at 572-73.  In the context of an honest services *quid pro quo*, this requires (i) a ***promise*** to influence a focused, concrete, and specific question, matter, cause, suit, proceeding, or controversy that is either pending or capable by law of being brought before a public official and (ii) that a factual basis for the alleged promise is alleged in the indictment.  *United States v. Silver*, 948 F.3d 538, 553 (2d Cir. 2020).

Defendants understand that evidence of a promise or agreement may be express or implied.  But, that flexibility does not mean that the government can throw legal caution to the wind by failing to describe the details of who, where, when, and how—especially in light of the regular and routine yellow-light caution the United States Supreme Court continues to flash in the bribery context.

In this case, there are no allegations of a promise or agreement in the first 122 paragraphs of the Second Superseding Indictment.  *See* ECF No. 214.  There

are no allegations of ***when***[2] a promise was made.  There is no description of ***how***
these individuals expressed their intentions or understanding.  There is no detail
whatsoever as to the ***nature*** of an alleged agreement or ***what*** was expected.
Although "in some circumstances, a wink and a nod, an exchange of monies, and a
subsequent vote on a bill likely will be sufficient," *Silver*, 948 F.3d at 558 n.10,
there are no allegations of a wink and a nod in this case.

In short, the allegations are devoid of any specifics as to the alleged promise
or agreement.  The Second Superseding Indictment merely states that Finch and
Anderson "did knowingly and willfully combine, conspire, confederate, and agree
together and with other persons to devise a scheme to defraud and deprive the City
of Lynn Haven and its citizens of their right to the honest services."  The substantive

---

[2] The parameters of the alleged *quid pro quo* are extraordinarily significant—indeed
legally critical.  *McDonnell* and *Silver* each place an emphasis on timing.  *McDonnell*
emphasizes that the relevant ***point in time*** in a *quid pro quo* bribery scheme is ***the
moment*** at which the public official accepts the payment.  *See* 579 U.S. at 572, 578-
79; *see also Silver*, 948 F.3d at 576 ("It is only upon a showing that, ***at the time*** the
official accepted the payment, she understood it to be a payment in exchange for
official influence on some specific, focused, and concrete matter involving the
formal exercise of governmental power that the Government has met its burden."
(emphasis added)).  Especially when facing a charging document that this Court has
concluded three times is improperly duplicitous as a result of multiple conspiracies,
precision is critically important.  As it did in the prior indictments, the Second
Superseding Indictment leaves the defendants guessing and does not fairly inform a
defendant of all charge(s) against which he must defend.  To be frank, duplicity,
sloppiness, and imprecision are a recipe for legal disaster.  Holding the government
to basic, minimal constitutional standards, after multiple failed attempts, comports
with the law and the Supreme Court's repeated admonishments.  In this unique case,
after multiple bites at the apple, dismissal is warranted.

honest service charges simply contain no specifics.  Merely tracking the language

of the honest services statute with no description of who, what, when, where, or

how is legally insufficient. *United States v. Schmitz*, 634 F. 3d 1247, 1259-60 (11th

Cir. 2011) (The charges "must be accompanied with such a statement of the facts

and circumstances as will inform the accused of the specific offense, coming under

the general description, with which he is charged.")

It is also not apparent with reasonable certainty whether the government

alleges that there was a ***single*** promise between Anderson and Finch or between

Barnes and Finch or ***multiple*** alleged promises over the Second Superseding

Indictment's six-year period.  There are simply vague, nondescript allegations,

which the Court has questioned repeatedly.  Even worse, the government here has

declined to plead with specificity or precision despite multiple invitations from this

Court and despite a clear and overriding mandate from the Supreme Court.  Despite

being ordered multiple times to plead with basic precision, the government has

either failed or declined.  Therefore, dismissal is required.

**B.     "Finch's Business Interests and City business" is not a legally concrete question, matter, cause, suit, proceeding, or controversy.**

Second, the charging document insufficiently describes the ***particular matter***

***or question*** to be influenced.  *McDonnell* explains that honest services fraud does

not require that the official "specify the means that he will use to perform his end of

the bargain." *Id.* at 572; *see also United States v. Ganim*, 510 F.3d 134, 147 (2d Cir.

2007) ("[S]o long as the jury finds that an official accepted gifts in exchange for a

promise to perform official acts for the giver, it need not find that the specific act to

be performed was identified at the time of the promise . . . ."). But, "even though

the particular **act** of influence need not be identified at the time of the official's

promise, the particular **question or matter** to be influenced must be." *Silver*, 948

F.3d at 553.

Applying *McDonnell*, the Second Circuit, in *Silver*, explained that absent a

promise to influence a focused and concrete question or matter there was no promise,

no *quid pro quo*, and no honest services fraud offense.

> The question that arises here . . . is: what must the official promise at
> the time the bribery offense is committed?
>
> . . . *McDonnell* suggests that, at the time the bribe is made, the promised
> official act must relate to a "properly defined" "question, matter, cause,
> suit, proceeding or controversy." . . . Thus, for an official to promise to
> perform an official act—and thereby engage in the prohibited *quid pro
> quo*—the official must promise to act *on* an identified "question, matter,
> cause, suit, proceeding or controversy" at the time of the promise.
>
> This point is illustrated in the context of this case by considering the
> following example: An official accepts a bribe, stating to the payor that
> she will "take official acts as the opportunities arise." In other words,
> the official has promised to take—as the opportunities arise—"*any*
> decision or action on any question, matter, cause, suit, proceeding or
> controversy that may at any time be pending," a promise so vague as to
> be meaningless. The official has not agreed to take official action on a
> properly defined—*i.e.*, focused, concrete, and specific—question or
> matter. The official has failed to offer a *quo*. Absent any additional
> specificity, criminal liability could attach to any later action that official
> takes so long as the official is exercising some ability granted to him or

her by law, regardless of the fact that the official essentially promised nothing in return for the payment.

. . .

We therefore disagree with [defendant] Silver that the "as the opportunities arise" theory of bribery does not survive *McDonnell*. But we agree that, if the district court's jury instructions failed to convey that, as relevant here, ***a particular question or matter must be identified at the time the official makes a promise or accepts payment***, they were in error.

*Silver*, 948 F.3d at 556-58 (citations omitted); *see McDonnell*, 579 U.S. at 568-72, 574 (Bribery requires that an official accept a payment, knowing that he is expecting to use his office to influence a "focused," "concrete," and "specific" question of matter that "may be understood to refer to a former exercise of governmental power."). This is consistent with the Eleventh Circuit's pre-*McDonnell* decision that a public official may not be convicted of honest services fraud for merely self-dealing or improperly steering public contracts. *United States v. Aunspaugh*, 792 F.3d 1302, 1308 (11th Cir. 2015). The law requires the government to plead, and obviously prove more. Counts 1–14 of the Second Superseding Indictment fail for this very reason.

Here, there are no allegations in the Second Superseding Indictment that sufficiently allege a particular question or matter to be influenced at the time of the promise. So even assuming a promise was made and described sufficiently in the charging document, which it was not, the particular question or matter to be

influenced must be concretely identified.

Despite the government's third tortured attempt to sufficiently plead violations of a conspiracy to commit honest services fraud and substantive counts of honest services wire fraud, careful inspection of the Second Superseding Indictment reveals that it is devoid of sufficiently concrete, specific factual allegations of an illegal agreement.  Ironically, in trying to repair the duplicitous conspiracy charge, the government has impermissibly expanded the conspiracy and substantive bribery charges beyond what was contained in the Superseding Indictment, and certainly beyond what is allowed by law.

In fact, to overcome the Court's finding that Count 1 of the Superseding Indictment charged multiple conspiracies and failed to charge other Counts with specificity, the government returned the Second Superseding Indictment charging Finch and Anderson with conspiracy to commit honest services fraud and substantive counts of honest services wire fraud "related to specific matters, to wit, Finch's business interest."  ECF No. 214 ¶¶ 125 (Count 1), 129 (Counts 2–14).  In the Court's now-vacated Order dismissing Count 1 of the Second Superseding Indictment, the Court recognized that paragraph 125 failed to fix the conspiracy count's duplicity problems.  ECF No. 293 ("[P]aragraph 125 is most naturally read as containing a non-exhaustive list of schemes.  No wonder Anderson's lawyers 'did not read and understand Paragraph 125 to . . . limit the scope of the charged

conspiracy.'"").  Indeed, Counts 1–14 fail because the government does not identify any promise relating to a specific, concrete, or focused question, matter, cause, suit, proceeding, or controversy.  The government's decision to charge Finch and Anderson in Counts 1–14 with a bribery related to a "non-exhaustive list" now fails to meet the requirements announced in *McDonnell* and as explained in *Silver*.

The Defendants previously sought dismissal of the honest services fraud counts within the Superseding Indictment for failing to identify sufficiently specific questions or matters.  ECF Nos. 131, 138, 143, 149, 155.  Leaning on *McDonnell* and *Silver*, the Court said "it [was] a close call" and found that the Superseding Indictment identified sufficiently specific questions or matters.  ECF No. 185 at 16. The government's vague modification to the language of the Second Superseding Indictment changes the analysis.  The honest services counts fail to sufficiently identify specific questions or matters changes now that the government has included the overinclusive, "non-exhaustive" language regarding "Finch's business interest." ECF No. 323 ("This Court stands by its conclusion that the most natural reading of this construction is that the WorldClaim and ECS schemes are incorporated within Count 1's non-exhaustive list.").[3]  The same "non-exhaustive" language in Count 1,

---

[3] Although the Court reinstated Count 1, deciding to address finding of duplicitous conspiracies with a forced election of theories and jury instructions, the Court did not reach the issue of whether "Finch's business interest" is legally sufficient according to *Skilling*, *McDonnell*, and *Silver*.

is also contained in Counts 2–14.  *Compare* ECF No. 214 ¶ 125, *with* ¶ 129.

This is now "the type of situation envisioned in *Silver* where the matter is so broadly drawn that 'criminal liability could attach to any later action the official takes so long as the official is exercising some ability granted to him or her by law.'" ECF No. 185 at 16 (quoting *Silver*, 948 F.3d at 557).  In short, the government's attempt to criminally capture any conceivable event relating to "Finch's business interest" is unconstitutionally vague and impermissible.

In fact, this Court previously ruled on this exact issue before and dismissed part of the Superseding Indictment.  *See* ECF No. 185 at 17.  Defendant Albritton moved to dismiss Count 16 of the Superseding Indictment for failing to allege any *quid pro quo*.  ECF No. 143.  The government argued that Count 16 alleged that the *quid pro quo* was Company A's payment for legal services in exchange for Albritton's directing business to Company A.  ECF No. 159 at 36-37.  This Court rejected the government's theory that any favorable action a public official took on any matter involving a company's business interests would give rise to an honest services fraud charge and dismissed the charge.  ECF No. 185 at 17 (citing *Silver*, 948 F.3d at 557).

The government is advancing an identical theory in Counts 1–14 of the Second Superseding Indictment.  A promise to perform *some* act or to "benefit the payor" without more cannot be understood to refer to a "formal exercise of

governmental power that is similar in nature to a "cause, suit, proceeding or controversy." *McDonnell*, 579 U.S. at 569-70. "[S]uch a promise is so lacking in definition or specificity that it amounts to no promise at all." *Silver*, 948 F.3d at 557. Without a promise or agreement, there is no *quid pro quo*. Without a *quid pro quo*, there can be no honest services violation. Both are required. Both are lacking in this charging document.

In the honest services context, the law requires the government and allegations to be more precise. A generic "business interest" is legally insufficient question or matter; thus Counts 1–14 warrant dismissal under Rule 12.

### C. The government's "as the opportunities arise" theory does not absolve the government of the requirement that it identify a promise relating to a specific, concrete, or focused question, matter, cause, suit, proceeding, or controversy.

As it has previously done, the government will undoubtedly argue that the "retainer" or "as opportunity arises" doctrines permit broad allegations of implied illegal agreements for of honest services bribery as contained in Counts 1–14. This argument, however, stretches the "retainer" theory to illogical ends and is not supported by law. *Silver*, 948 F.3d at 553 ("The 'as the opportunities arise' theory of bribery . . . requires a promise to 'exercise particular kinds of influence as specific opportunities arise.' *McDonnell* clarifies that, to be convicted of bribery under the 'as the opportunities arise' theory, the public official must, at minimum, promise to influence a 'focused and concrete' 'question or matter' that 'involves a formal

exercise of governmental power.'").

As discussed above, this Court has previously rejected the government's theories that any favorable actions in support of a company's business interest survives a Rule 12 motion to dismiss. *See supra* § IV(B). To be clear, this motion challenges the government's failure to identify and allege a concrete question or matter that the official understood at the time of a promise—not the "retainer" or "as opportunities arise" theories of bribery or sufficiency of evidence. Here, the expansive, unrestrained honest services allegations in Counts 1–14 of the Second Superseding Indictment are legally insufficient to charge a violation of the honest services statute against Defendants Finch and Anderson and should be dismissed.

## V.   Conclusion

As pled by the government, an honest services theory requires an allegation of bribery. Bribery, at minimum, requires an allegation of an agreement, a *quid pro quo,* and an intent to influence an official act. It requires that an official accept a payment, knowing that they expecting to use their office to influence a "focused," "concrete," and "specific" question of matter. A promise to perform *some* act or to "benefit the payor" without more cannot be understood to refer to a "formal exercise of governmental power" that is similar in nature to a "cause, suit, proceeding or controversy." *McDonnell*, 579 U.S. at 569-70.

Here, alleging an intent to influence or act in favor of unlimited and non-

exhaustive "business interest" is not legally sufficient.  Because Counts 1–14 of the Second Superseding Indictment are fatally flawed, they must be dismissed.  Respectfully, Defendant Finch urges that the Court strongly consider dismissal ***with prejudice*** as the government should not get unlimited bites at the apple.

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

Pursuant to Local Rule 7.1(F), the undersigned certifies that this motion contains 5,037 words pursuant to the word count provided by Microsoft Word.

## <u>LOCAL RULE 7.1(K) REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(K), Defendant James D. Finch respectfully requests that the Court set this matter for hearing because oral argument would assist the Court in resolving the issues raised in this Motion to Dismiss.  The undersigned estimates that the defense would need approximately 60 minutes for argument.

Case No. 5:20-CR-28-MW/MJF

Respectfully submitted,

*/s/ Guy A. Lewis*
Guy A. Lewis
Florida Bar No. 623740
Jeffrey M. Forman
Florida Bar No. 105135
The Law Offices of Guy A. Lewis PLLC
12575 SW 67th Avenue
Pinecrest, Florida 33156
954-688-6340
glewis@lewistein.com
jforman@lewistein.com

*Counsel for Defendant,*
*James D. Finch*

Case No. 5:20-CR-28-MW/MJF

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 12, 2022, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF and that a true and

correct copy of the foregoing has been served electronically via the CM/ECF System

on all counsel of record.


　　　　　*/s/ Guy A. Lewis*
　　　　　GUY A. LEWIS