# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Case No. 5:20cr28-MW/MJF**

**MARGO DEAL ANDERSON and
JAMES DAVID FINCH,**

        **Defendants.**

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS TO SEVER

On August 23, 2022, Defendant James Finch moved to sever Counts 17 through 25 against Defendant Margo Anderson so that charges against her only would be tried later. ECF 325. A few days later, Defendant Anderson filed a separate motion seeking the same relief, without seeking to sever charges against only Defendant Finch. ECF 326. Both Defendants claim misjoinder. Defendant Finch makes the conclusory assertion that evidence about ECS and WorldClaim will "severely prejudice" him without explaining how. ECF 325 at 12. Defendant Anderson says, in essence, that her chances of acquittal would be better if there were separate trials. ECF 326 at 12. Neither Defendant

makes meaningful argument why any evidence relating to ECS and WorldClaim would be inadmissible (as inextricably intertwined evidence or under Rule 404(b)) if the counts were severed for separate trials. Rather, their circular and conclusory arguments show that Defendants plainly fear that a properly instructed jury will convict them on factually related charges after it hears all the relevant, admissible evidence about what they did. Though the legal terms used by both Defendants in their papers are "sever" and (in later filings, no doubt) "exclude," this is an attempt to divide and conquer to keep the jury, or rather two juries, in the dark about the whole scope of Defendants' alleged criminal conduct.

Defendants are properly joined because, under circuit precedent, there is a "substantial identity of facts or participants" and thus the charges Defendants want tried separately are within the "same series of acts or transactions" under Federal Rule of Criminal Procedure 8(b). Because Defendants have not shown a serious risk that a joint trial would compromise any specific trial right or prevent the jury from making a reliable judgment about guilt or innocence, severance for prejudice is not warranted under Rule 14(a). See *Zafiro v. United States,* 506 U.S. 534,

539 (1993). Accordingly, this Court should deny Defendants' motions to sever.

## BACKGROUND

The charges in the second superseding indictment are briefly summarized here.

Count 1 charges both Defendants with conspiracy to commit honest services wire fraud relating to Defendant Finch's business interests before the City of Lynn Haven, describing certain projects, as specific opportunities arose under the "retainer theory" of bribery. ECF 214 ¶¶123-126. Counts 2 through 14 charge Defendants with substantive honest services wire fraud counts regarding specific wires sent in furtherance of the Count 1 conspiracy. ECF 214 ¶¶127-130. Count 15 charges Defendant Anderson with a violation of 18 U.S.C. §666 relating to the acceptance of a motorhome intending to be "influenced or rewarded" in connection with City business related to Defendant Finch. ECF 214 ¶¶131-132. Count 16 is the inverse of Count 15; it charges Defendant Finch with offering and agreeing to give the motorhome with such intent. ECF 214 ¶¶133-134.

Count 17 essentially charges Defendant Anderson with stealing from the City related to hurricane cleanup at her residence. ECF 214 ¶¶135-136. Counts 18 and 19 charge Defendant Anderson only with traditional wire fraud schemes relating to hurricane recovery and her involvement with ECS. The ECS aspect of the overall scheme is alleged to be fraudulent billings to the City for hurricane cleanup on public property which was not performed, and where ECS workers were instead, in part, performing work at Defendant Anderson's property.

Counts 20 through 24 charge Defendant Anderson with honest services wire fraud relating to the WorldClaim scheme. ECF 214 ¶¶140-142. The WorldClaim scheme is alleged as an agreement for the City Manager, a City Commissioner, and Defendant Anderson to receive free insurance adjustment services in exchange for a contract with the City.

Counts 25 and 26 separately charge Defendants with making false statements to the FBI in their separate interviews on November 18, 2019, and July 13, 2020, respectively. ECF 214 ¶¶143-147.

On November 18, 2019, two FBI special agents interviewed Defendant Anderson. In the interview, Defendant Anderson claimed that that she did not know anything about ECS and was not aware of its role

4

in the cleanup. Defendant Anderson claimed that she first met Mickey White of ECS in December 2018 or January 2019 while volunteers were cleaning up streets. The indictment against Michael White, Mickey White, and others, was unsealed the next day on November 19, 2019.[1] That indictment specifically alleged that Michael White directed City employees to pay an ECS invoice for $527,512, which falsely claimed that ECS had performed work at a cemetery and sports complexes when in fact ECS workers were at Michael White's property (outside of Lynn Haven) and the residences of "the Mayor and her mother."[2]

Shortly thereafter, in early December 2019, Defendant Anderson retained attorney Ron Johnson to represent her. On December 30, 2019, a check from the Anderson's joint bank was signed by her spouse and made out to Defendant Finch for $20,000, purportedly for the Motorhome transferred in February 2018. This was just days after Defendant Anderson and Defendant Finch were each served grand jury subpoenas for documents regarding the financial relationship between them. But it was 22 months after Defendant Finch provided the motorhome to

---

[1] *United States v. White et al*, 5:19cr78-RH/MJF, ECF 12 (N.D. Fla.).

[2] 5:19cr78, ECF 1 ¶22.

5

Defendant Anderson and her husband at no charge, just after she had pressured the City Manager to do business Defendant Finch's way. In July 2020, Defendant Finch lied to the FBI about the nature of the motorhome transfer by presenting a bill of sale falsely representing that $35,000 had been paid as of July 2018.

On November 16, 2021, after guilty pleas from seven defendants (in this case and two others brought), the grand jury returned a second superseding indictment. ECF 214. In early December 2021, Defendants moved to dismiss it with prejudice. On June 13, 2022, the Court denied Defendants' motions to dismiss the second superseding indictment.[3] In late August 2022, both Defendants moved to sever counts brought only against Defendant Anderson to have those tried later.

## ARGUMENT

This Court should deny Defendants' motions to sever Counts 17 through 25 of the second superseding indictment. The second superseding indictment charges a conspiracy and scheme with Defendant Anderson agreeing to bribes from Defendant Finch for his business interests before

---

[3] The Court originally granted Defendants' motions to dismiss Count 1 on duplicity grounds. But the Court granted the government's motion for reconsideration in part and vacated that dismissal.

the City of Lynn Haven, and Defendant Finch lying about it. It also charges Defendant Anderson with being bribed (and otherwise defrauding the City) by others in ways that are directly relevant to proving an attempted cover-up of a bribe from Defendant Finch, and Defendant Anderson lying about that fraud just before the attempted cover-up.

All the counts alleged are properly joined; they are logically connected, subject to overlapping proof, and connected by a common scheme or plan. See Fed. R. Crim. P. 8(b). To sever the counts and justify the need for a second trial at which a second jury will be convened (and one where many of the same witnesses will testify a second time), Defendants must overcome a heavy burden by showing substantial prejudice from the joinder. See Fed. R. Crim. P. 14(a). Defendants have not done so. Because Defendants have failed to make such a showing, the motions should be denied.

The general rule is that "[d]efendants who are indicted together are usually tried together." *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011) (citing *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir.2007); *Puiatti v. McNeil*, 626 F.3d 1283, 1309; *United States v. Chavez*,

7

584 F.3d 1354, 1360 (11th Cir. 2009); *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005); *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001); *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997); *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985); *United States v. Perez*, 489 F.2d 51, 65 (5th Cir. 1973).[4] Joint trials have many benefits: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase judicial efficiency, and conserve scarce judicial resources. There is a "solid body of law favoring joint trials and placing a heavy burden on those who want to be tried separately." *Lopez*, 649 F.3d at 1233.

In deciding whether to permit joinder of defendants, a court must accept the factual allegations of the indictment as true. See *United States v. Phillips*, 664 F.2d 971, 1016 (5th Cir. 1981). Under Rule 8(a), *offenses* may be charged in the same indictment when they are: (1) of the same or similar character, (2) based on the same act or transaction, or (3) connected together or constitute parts of a common scheme or plan. Under Rule 8(b), "[t]he indictment or information may charge 2 or more

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

*defendants* if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." (emphasis added) "The defendants may be charged in one or more counts together or separately" and "[a]ll defendants need not be charged in each count." *Id.*

Here Rule 8(b) is the governing framework. But cases interpreting the second and third tests from Rule 8(a) are generally held applicable to Rule 8(b). See, *e.g.*, *United States v. Roselli*, 432 F.2d 879, 898 (9th Cir. 1970). This makes sense: if alleged offenses are based on the same act or transaction, are "connected together," or are "parts of a common scheme or plan," than it stands to reason that defendants alleged to "have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" will have, allegedly, done the same.

Regarding joinder of defendants, the Eleventh Circuit utilizes the "broadest definition of 'series,'" which "comes from the cases that say a 'substantial identity of facts or participants' can be enough to satisfy Rule 8(b)." Wright & Miller, 1A Fed. Prac. & Proc. Crim. §145 (5th ed.); *e.g.*, *United States v. Morales*, 868 F.2d 1562, 1569 (11th Cir. 1989) (citing

earlier cases and applying this standard). Based on the text of Rule 8(b), "it is obvious that each defendant need not have participated in *every* act or transaction in the alleged series." Wright & Miller, §145 (emphasis added). For purposes of the rule, "transaction" is a word of flexible meaning, and may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship. See *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976).[5]

Defendants are properly joined where the fact of illegal activity by one provides the impetus for illegal activity by them both. See *United States v. Dominguez*, 226 F.3d 1235, 1230 (11th Cir. 2000). Consider *Morales* for example. There the court considered the government's theory of the case and concluded that Rule 8(b) was satisfied because one crime committed by several defendants explained why one defendant committed another; a drug trafficking conspiracy explained why a drug dealer answered the door with a gun. 858 F.2d at 1569-1570.  Indeed,

---

[5] Defendant Anderson asserted that misjoinder is "inherently prejudicial." ECF 326 at 2. That is not correct. Rule 8 misjoinder is subject to harmless-error review. See *United States v. Lane*, 474 U.S. 438, 449 (1986).

overlapping proof tends to show the "substantial identity" required for joinder of defendants. *Id.*

The second superseding indictment properly joins Defendants. Defendant Anderson complains about "mental gymnastics," a rimless wheel, and disconnected spider webs. ECF 326 at 4. This case is not that complicated, especially after other defendants have pleaded guilty.

As alleged in the second superseding indictment, Defendant Finch was a contractor who paid public officials (Defendant Anderson and Commissioner Barnes) to get what he wanted from the City of Lynn Haven. Defendant Anderson was a public official who accepted bribes from Defendant Finch and other people. When Defendant Anderson's conduct was implicated in bribes from those other persons in a federal criminal indictment, both Defendants tried (clumsily) to cover up a bribe from Defendant Finch to Defendant Anderson. They both have continued (clumsily) to try to cover up their relationship with one another.

If counts were severed, the same evidence would be properly admitted at both trials. The evidence regarding ECS and WorldClaim would be admissible as to "Finch schemes" (as Defendants label them).

The evidence about the "Finch schemes" is relevant to ECS and WorldClaim.

The charged conspiracy includes numerous allegations that Defendant Anderson pressured former City Manager Michael White to take official action favorable to Defendant Finch's business interests. Recall, also, that the previous city manager left in part because he did not like working with Defendant Anderson and told her no from time to time. See Def. Ex. 62 at 2-3. Michael White was hired after being vetted by Derwin White, Defendant Anderson's husband, and Defendant Finch to make sure he would be a "friend" to City contractors. According to Michael White, Defendant Anderson believes in the concept "you take care of me, I take care of you." While Michael White was agreeing to bribes related to ECS and WorldClaim, he made sure to include Defendant Anderson as a beneficiary. Thus, ECS and WorldClaim, to varying degrees, both corroborate Michael White's account of their relationship, which was to the benefit of both Defendants in this case.

The ECS evidence also provides important context about the hurricane debris disposal business that Defendant Anderson directed to Defendant Finch. As noted in detail in other filings, after the hurricane

struck on October 10, 2018, ECS got lots of money from the City for hurricane cleanup, committing a large fraud in the process. Defendant Finch was out of pocket (to some extent) for the rest of the month. The evidence indicates that Defendant Finch was upset that he was missing out on lucrative City business, which was heading to ECS (Mickey White) and then GAC (Derwin White). Among other things, while he was out of town, Defendant Anderson stopped the City Manager and City Engineer from attempting to use City property for debris disposal. The City Manager, Michael White, and City Attorney determined to send the disposal business to Derwin White. Upon Defendant Finch's return, Defendant Anderson convened a meeting at his house, with the City Engineer and City Manager, and thereafter directed City Manager Michael White to send the debris to Defendant Finch's property.  And while the parties dispute inferences and conclusions to draw from the evidence, there is no doubt that Defendant Finch was involved in the aftermath of Michael White's March 2019 arrest, the search of ECS, and the backdated invoices found there; indeed, the evidence indicates that

Defendant Finch was the impetus for Derwin White instructing Mickey White to create the backdated invoices.[6]

The evidence of the ECS and WorldClaim schemes also explains the timing of the Andersons' December 2019 payment for the motorhome[7]; it is the impetus for the act of concealment in furtherance of the alleged Anderson/Finch conspiracy. See *Dominguez*, 226 F.3d at 1230. If no money was paid until December 2019, when a strong reason to coverup appeared (*i.e.*, the possibility of Counts 17 through 25), it also proves the knowing and willful falsity of the bill of sale that Defendant Finch gave to the FBI in July 2020 (Count 26) in which he falsely claimed that $35,000 had been paid as of July 2018. Such evidence would be admissible against Defendant Finch on charges that he conspired to bribe, and did bribe, Defendant Anderson. Both the ECS and WorldClaim schemes are relevant to show why the partial payment for the motorhome was eventually made in December 2019, after other persons were charged with respect to ECS and after Defendant Anderson was interviewed by

---

[6] Defendant Finch's counsel have asserted that they have direct evidence that the impetus for the backdated invoices was a leak from law enforcement about the imminent search of ECS. But that evidence, if it exists, has not been disclosed.

[7] A $20,000 check, and a suspicious and unexplained $15,000 cash withdrawal.

14

the FBI in November 2019, and are therefore necessary to complete the story of the crimes. See, *e.g.*, *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004) (explaining that "evidence of . . . events contributed to the understanding of the situation as a whole").

Put another way, the alleged ECS and WorldClaim bribes to Defendant Anderson are intertwined with, and thus are logically connected to, the bribery conspiracy between Defendant Anderson and Defendant Finch even though he is not charged regarding those matters; Rule 8(b) does not require him to be charged in those counts for proper joinder.[8] There is a "substantial identity of facts and participants" under Rule 8(b).

Moreover, an important issue at trial is Defendants' intent. Defendants say that the stream of benefits flowing from Defendant Finch to Defendant Anderson came from friendship rather than a corrupt bargain; that the benefits were not offered or accepted with the intention

---

[8] The Court's reconsideration order stated the government "has previously (and very nearly convincingly) made the argument that the ECS scheme furthered Finch's interests." ECF 323 at 6. The government does not believe it made that contention. The government argued that the ECS scheme was but one component of a broad conspiracy to defraud the City and that broader conspiracy included Defendant Finch's projects, or "business interests," as other components. See ECF 159 at 24-26.

of influencing official action. The second superseding indictment alleges that they were. This is a key point. Indirect evidence can show such intent. See, *e.g.*, *United States v. Menendez*, 137 F. Supp. 3d 709, 716 (D.N.J. 2015). Evidence that Defendant Anderson committed fraud against the City with respect to ECS and accepted a bribe/kickback with respect to WorldClaim is plainly relevant to whether she agreed to accept a thing of value from Defendant Finch with the intent to be influenced in the performance of an official act. See Fed. R. Evid. 404(b). Evidence that Defendant Finch bribed Defendant Anderson regarding his projects is relevant to her intent regarding the ECS and WorldClaim schemes. See, *e.g.*, *United States v. Ellisor*, 522 F.3d 1255, 1267-1268 (11th Cir. 2008) (holding that similar frauds were admissible to prove intent to engage in charged conduct); see also *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012) (explaining that "[t]he more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act").[9]

---

[9] The Court reasoned in a previous order that facts related to the WorldClaim project are not relevant to proving the charged conspiracy unless the WorldClaim matter is part of it. Such evidence is intrinsic if it is "1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Ellisor*, 522 F.3d at 1269. All three of those

Several cooperating defendants/witnesses who are expected to give significant testimony regarding the alleged "Finch schemes" have admitted to or are otherwise implicated by other information in the ECS and WorldClaim matters.[10] Defendants have made plain their intent to impeach these witnesses' testimony with the witnesses' own fraudulent conduct and any guilty pleas to such conduct. It would be absurd to allow that sort of cross-examination and resulting argument that the witnesses should not be believed about the "Finch schemes" because the witnesses are fraudsters themselves, but then exclude the witnesses' testimony about Defendant Anderson's alleged involvement with those schemes, when such evidence is clearly admissible as intrinsic to the conspiracy or extrinsic evidence of Defendant Anderson's intent.

Defendants both rely on *United States v. Nelson*, No. 3:10cr23, 2011 WL 1560587 (M.D. Fla. Apr. 25, 2011), for its Rule 14 analysis. ECF 326 at 6 n.1. But that case illustrates why the counts Defendants want severed are properly joined under Rule 8. The case involved an alleged

---

tests are met here. Such evidence, if only extrinsic, is still admissible under Rule 404(b) to show intent.

[10] The government respectfully refers to exhibits the defense offered for the evidentiary hearing: Defendant Exhibits 19 through 44, but specifically 21, 44, and 50.

public corruption scheme where a public official accepted bribes from another defendant and was separately charged with a another factually related fraud in which the other defendant was not alleged to have participated. The court denied a motion to sever but later reconsidered. And the though the court ultimately severed the charges under Rule 14 on a showing of prejudice it reaffirmed that the defendants and the offenses sought to be severed were properly joined under Rule 8. 2011 WL 1560587 at *1.

Here there is substantial overlapping admissible evidence. There is a "substantial identity of facts or participants." Defendants are alleged to have "participated in the . . . same series of acts or transactions, constituting an offense or offenses," even though Defendant Finch is not charged in the counts Defendants seek to sever. See Fed. R. Crim. P. 8(b). The charges are properly joined under Rule 8(b).

Under Rule 14(a) "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts." Relief from a claim of improper joinder requires more than just the potential for prejudice. See *Lopez*, 649 F.3d at 1233. The exceptional circumstances justifying a deviation from

18

the rule that defendants who are indicted together should be tried together, however, are few and far between. *Id.* A defendant seeking a severance must overcome the "heavy burden of demonstrating [that] compelling prejudice" would result from a joint trial. *Id.* (citing *Browne,* 505 F.3d at 1268) (emphasis added). "To show compelling prejudice, a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work." *Id.* (emphasis added). Here, Defendants have failed to meet that burden.

There are two categories of potential prejudice: a serious risk that a joint trial would either: (1) compromise a specific trial right, or (2) prevent the jury from making a reliable judgment about guilt or innocence. See *Zafiro,* 506 U.S. 539. Defendants make no argument that a joint trial would compromise a specific trial right. See generally ECF 325, ECF 326.

Turning then to the second category of prejudice, it applies in three situations. First, severance should be granted where the number of defendants and charges makes it nearly impossible to assess the guilt or

19

innocence of each independently. That is not the case here. The Court has already determined, with regard to a duplicity concern with Count 1, and very detailed factual *allegations*, that a limiting instruction that the Count 1 conspiracy does not include ECS or WorldClaim is enough to diffuse the identified defect. ECF 323 at 8. It follows that such an instruction regarding *evidence* supporting those allegations—specifically, that the jury must consider evidence against only those Defendant(s) which the evidence implicates, and to assess the guilt or innocence of each Defendant on each charge separately—would be sufficient to ensure that the jury will reliably determine guilt or innocence as to each count and each Defendant. See, *e.g.*, *Lopez*, 649 F.3d at 1239. As the Supreme Court has said, "the risk of transference of guilt over the border of admissibility [may be] reduced to the minimum by carefully crafted limiting instructions with a strict charge to consider the guilt or innocence of each defendant independently." *Lane*, 474 U.S. at 450 n.13 (quotation omitted). Defendants have made no colorable argument to the contrary.

Second, severance is required if there is compelling evidence that is not admissible against one or more of the co-defendants. *Blankenship*, 382 F.3d at 1123–25. "This is a concern, for example, 'where the ...

gruesome evidence against one defendant overwhelms the *de minimus* evidence against the co-defendant(s)." *Id.* (quoting *United States v. Gray*, 173 F. Supp. 2d 1 (D.D.C.2001)). That is not the case here. Defendants have not argued or shown specifically what evidence would be inadmissible against one of them. But the government addressed this in its December 2021 paper (noting that Defendants had not asked for severance) and its May 2022 paper (noting same). For the reasons described above at 7 through 17, there is not prejudicial spillover.

Consider, for example, the facts of the Eleventh Circuit's *Lopez* decision. 649 F.3d at 1222. There defendants charged as part of a drug conspiracy were additionally charged with murdering a drug dealer and his family. *Id.* at 1238. The Eleventh Circuit explained that while "[n]o defendants would want evidence of the murder to come before the jury at their trial regarding the drug conspiracy, even if it were made clear that they did not participate in the murders," "[w]hat defendants want . . . is not the test." *Id.*  The Eleventh Circuit reasoned that the district court had repeatedly instructed the jury to consider evidence against only those defendants that the evidence implicated and to assess the guilt or innocence of each defendant separately. *Id.* at 1239. If severance was not

required there, it surely is not warranted here. See also *United States v. Hernandez*, 921 F.2d 1569, 1579 (11th Cir. 1991) (explaining that "[b]ecause conspiracy defendants are usually tried together, the simple fact that not all of the charges are directly related does not establish prejudice").

Lastly, severance may be appropriate where a related crime by one defendant is significantly different than one committed by a co-defendant. That is obviously not the case here. Counts 17 through 25 are very similar to the remainder. Defendants have not argued otherwise.

Trying all counts together makes sense. Doing so greatly advances judicial efficiency by avoiding the need for two trials at which the same evidence would be presented. Just as the counts are similar in character, a single, joint trial would not be unwieldy. Against these efficiencies, endorsed by the liberal joinder principles behind Rule 8, the Defendants identify at most only "generalized claim[s] of prejudice," *Rivera*, 546 F.3d at 254, that can be cured by an appropriate limiting instruction (given repeatedly throughout the trial).

For the reasons stated above, the Court should not sever Counts 17 through 25. But if it does, the trial of Counts 17 through 25 should go

first. Both of Defendants' motions specifically and expressly ask to proceed to trial on Counts 1 through 16 and 26 on November 28, 2022, and schedule Counts 17 through 25 at a later time. ECF 325 at 13; ECF 326 at 13. The reason why Defendant Anderson (or her counsel) thinks that is a good idea for her is unclear. But if Defendant Anderson was convicted on any of Counts 17 through 25, it may be in her interest to seek a plea agreement with the government regarding the remaining charges against her (Counts 1 through 15). Having her trial on Counts 17 through 25 after a trial on Counts 1 through 16 and 26 would remove that possibility, however remote it may seem to her at this juncture.[11] The only beneficiary of trying Counts 17 through 25 later is Defendant

---

[11] Notably, while Defendant Finch's counsel have moved to sever charges against only Defendant Anderson, so there will be two trials for her, Defendant Anderson has not moved to sever Counts 2, 3, and 8, which are only against Defendant Finch, relating to him bribing another City Commissioner, which Defendant Anderson is not alleged to have known about or personally participated in. That would be a difficult argument to make considering the law on joinder in conspiracy cases. But one might think that if charges for Defendant Anderson accepting bribes from ECS and WorldClaim should be severed because Defendant Finch is not alleged to have taken part, that charges that Defendant Finch bribed the other Commissioner should similarly be severed because Defendant Anderson also is not alleged to have taken part. Apparently, Defendant Anderson is not interested in two trials for Defendant Finch to avoid any prejudicial spillover, under Rule 14(a), to Defendant Anderson. Defendant Anderson's counsel have, however, again moved to dismiss Count 1 on duplicity grounds, and moved to dismiss Counts 2 and 3 for other reasons, though Counts 2 and 3 are substantive offenses solely against Defendant Finch, not Defendant Anderson. See ECF 329.

Finch. Given that Defendant Finch has been trying to avoid trial since March 2021, dropped a "slow trickle" of successive challenges to the charging documents since that time, and in July pushed to delay the trial into late November, any insistence on a speedy trial now would be rather odd.

Defendant Finch requested oral argument on his motion. ECF 325. His counsel estimates that the defense would need 60 minutes of argument on the motion. ECF 325 at 14. Defendant Finch says "we are prepared to present to the Court evidence or argument or both to convince the Court of the rightness of our position." ECF 325 at 2 n.2. The government notes that defense counsel made a similar estimate for the evidentiary hearing the Court set for March 31, 2022. Defense counsel stretched an estimated two-hour hearing into three days. Oral argument is unnecessary for the Court to resolve the issue of severance; rather, a ruling (that is, a denial) based on the pleadings will suffice.

## CONCLUSION

Accordingly, the government respectfully asks that the Court deny Defendants' motions to sever, ECF 325 and 326.

Respectfully submitted on September 12, 2022,

JASON R. COODY
United States Attorney

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
ANDREW J. GROGAN
Assistant U.S. Attorneys
Florida Bar No. 322415
Florida Bar No. 85932
111 North Adams St., 4th Floor
Tallahassee, FL 32301
(850) 942-8430
stephen.kunz@usdoj.gov
andrew.grogan@usdoj.gov

## LOCAL RULE 7.1 CERTIFICATE

I certify that this paper does not exceed 8,000 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
Assistant United States Attorney