**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                        **Case No.:  5:20cr28-MW/MJF**

**MARGO DEAL ANDERSON et al.,**

>    *Defendants.*

_____/

**ORDER DENYING ANDERSON'S MOTION TO SEVER AND GRANTING
FINCH'S MOTION TO SEVER**

In this public corruption case, Defendants Margo Deal Anderson and James David Finch move to sever certain counts from the second superseding indictment to be tried separately. ECF No. 325; ECF No. 326. The Government filed a response in opposition. ECF No. 333. This Court finds that while the challenged counts are properly joined, Finch would suffer prejudice if the counts are not severed. Thus, Finch's motion to sever is **GRANTED**.[1]

I

This Court starts with the relevant background. The operative indictment is the second superseding indictment returned on November 16, 2021. ECF No. 215. It alleges that Anderson—then the Mayor of Lynn Haven—abused her position for

_____

[1] The Court need not address the substance of Anderson's motion to sever because Finch's motion seeking the same relief is due to be granted. Accordingly, Anderson's motion to sever, ECF No. 326, is **DENIED** as moot.

personal gain. Several of the Anderson's alleged abuses of power involve Finch, who owns a construction business, bribing her for favorable treatment related to city projects.

The second superseding indictment alleges that Anderson participated in a conspiracy involving five projects—some involving Finch, others involving unrelated business interests.

- **17th Street**: Finch bribed Anderson (the mayor) and Barnes (a city commissioner) to support his projects with the City of Lynn Haven. In addition, Finch obtained one of those projects, the 17th street project, through a bid rigging agreement with other companies—including Company A.

- **ECS**: Erosion Control Specialists (ECS) bribed Michael White (the city manager), Anderson, and Albritton (the city attorney) and received hurricane cleanup and trash pickup contracts in return. ECS also submitted false invoices and, when those invoices were paid, paid kickbacks to Albritton.

- **Debris Disposal**: Unbeknownst to the City, Company A employed Albritton. Albritton directed city contractors to use Company A's property to dispose of debris. After a meeting with Anderson, Finch, White, and the owner of Company A, Anderson directed companies C and D to dispose of debris at one of Finch's properties. Anderson also vetoed White's plan to designate city-owned property as a disposal site and secured state government support for a

2

plan to use Finch's site. At the same time, Anderson accepted things of value from Finch.

- **WorldClaim**: WorldClaim, a public adjusting firm, approached Individual A, a contract engineer with the City, with a proposal: help us get a contract assisting the City with its hurricane claims and we will give you a percentage of whatever we recover. Individual A, in turn, approached Anderson and White, offering free services from WorldClaim. Anderson and White signed an agreement with WorldClaim using Anderson's post-hurricane emergency powers. WorldClaim, in turn, provided them free or reduced services.

- **Rebuild**: After Hurricane Michael, the City had to rebuild many of its facilities. Finch bribed Anderson for inside information and to exert pressure on city officials to aid Finch in obtaining the rebuild project at a significantly higher cost than the City would pay through its already-planned rebuild project.

*See* ECF No. 215 at ¶¶ 1–122.

Incorporating those factual allegations, Count 1 charges both Anderson and Finch with conspiracy to commit honest services wire fraud:

> The manner and means of the conspiracy were that the defendant and conspirators used **ANDERSON**'s public official position as the Mayor of Lynn Haven . . . to offer, give, solicit, receive, agree to accept, and accept things of value from **FINCH**, which were offered and provided by **FINCH** to **ANDERSON** . . . with the intent that [she] would be influenced in the performance of official acts. **ANDERSON**

agreed to accept and did accept things of value from **FINCH** with the intent that she would be influenced in the performance of official acts related to specific matters, to wit, **FINCH**'s business interests before, including the 17th Street project, projects under the ½ Cent Surtax contract, and City business for hurricane recovery, as specific opportunities arose.

ECF No. 215 at ¶ 125.

Counts 2 through 14 charge both Anderson and Finch with substantive honest services wire fraud counts regarding specific wires sent in furtherance of the Count 1 conspiracy. ECF No. 214 at ¶¶ 127–130. Count 15 charges Anderson with a violation of 18 U.S.C. § 666 relating to the acceptance of a motorhome intending to be "influenced or rewarded" in connection with City business related to Finch. *Id.* ¶¶ 131–32. Count 16 is the inverse of Count 15—it charges Finch with offering and agreeing to give the motorhome with such intent. *Id.* ¶¶ 133–34. Count 17 charges Anderson with violating 18 U.S.C. § 666(a)(1)(A) by directing ECS to perform hurricane cleanup at her residence pursuant to a contract with the City of Lynn Haven—essentially stealing from the City. *Id.* ¶¶ 135–36. Counts 18 and 19 charge Anderson with wire fraud schemes relating to hurricane recovery and her involvement with ECS. Counts 20 through 24 charge Anderson with honest services wire fraud relating to the WorldClaim scheme. *Id.* ¶¶ 140–42. Counts 25 and 26 separately charge Defendants with making false statements to the FBI in their separate interviews on November 18, 2019, and July 13, 2020, respectively. *Id.* ¶¶ 143–47.

The Court previously dismissed Count 1 as duplicitous. ECF No. 293. After the Government moved for reconsideration of this remedy, the Court opted to instead to issue a curative instruction at trial regarding the defective indictment. ECF No. 323.

## II

In the motions currently before the Court, Finch and Anderson both to sever Counts 17 through 25 against Anderson and set these charges for a separate trial without Finch. ECF No. 325; ECF No. 326.[2] As grounds for severance, Defendants claim that (A) the challenged counts are misjoined under Federal Rule of Criminal Procedure 8(b); and (B) even if these counts are properly joined, the Court should exercise its discretion under Federal Rule of Criminal Procedure 14(a) and sever these counts due to the prejudice each Defendant would suffer from a joint trial. The Court will address each issue in turn.

## A

Under Federal Rule of Criminal Procedure 8(b), "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." "The defendants may be charged in one or more

---

[2] As the Government notes, Anderson does not seek to sever the charges directed solely at Finch. *See* ECF No. 326 at 13.

counts together or separately" and "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Proper joinder under Rule 8 requires " 'substantial identity of facts or participants' between two offenses." *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978) (quoting *United States v. Marionneaux*, 514 F.2d 1244, 1248–49 (5th Cir. 1975)).[3] "Rule 8 is broadly construed in favor of the initial joinder." *United States v. Dominguez*, 226 F.3d 1235, 1238 (11th Cir. 2000).

Defendants argue that the charges related to Anderson's alleged dealings with ECS and WorldClaim concern "separate and distinct conspiracies with no connection" to Finch. ECF No. 325 at 8; *see also* ECF No. 326 at 4–5. Because these charges have no specific connection to Finch, Defendants insist that they are improperly joined. ECF No. 325 at 8. The Government contends that joinder is proper here because Defendants participated in the same series of acts; namely, that Finch played a significant role in Anderson's larger scheme to accept bribes in exchange for official actions to benefit her patrons. ECF No. 333 at 11.

The Court finds that Counts 17–25 are properly joined under Rule 8(b). While Defendants' point that Finch has little to no connection to the ECS and WorldClaim charges is well-taken—more on that later—Rule 8(b) does not require that every charge in a multi-defendant indictment be strictly related. The text of Rule 8(b)

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

explains that "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Charges in a multi-defendant indictment need only "substantial identity of facts or participants' between two offenses." *Nettles*, 570 F.2d at 551. The operative indictment meets that requirement here. While Finch played no direct role in the alleged ECS and WorldClaim projects, they combine with the other projects involving Finch to form Anderson's larger pay-for-play scheme. The indictment also alleges that Michael White, the former City Manager for the City of Lynn Haven, faced pressure from Anderson to benefit Finch's business interests with the City while he also assisted her in the ECS and WorldClaim schemes. *See* ECF No. 214 at 19, 28. In short, Finch's significant role in Anderson's larger alleged corruption schemes combined with Michael White's common role in both the Finch projects as well as the ECS and WorldClaim's projects constitutes a substantial identity of facts or participants for purposes of Rule 8(b). In other words, the ECS and WorldClaim related counts are not misjoined.

B

But even when joinder is permitted, this Court may still order severance. Under Rule 14(a), "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." The Supreme Court explained

that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Id.*

The Eleventh Circuit instructs district courts considering a motion to sever under Rule 14(a) to "balance the prejudice that a defendant may suffer from a joint trial, against the public's interest in judicial economy and efficiency." *United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir. 1995). "In determining whether a defendant is prejudiced, the court must consider whether the jury could individualize each defendant in his relation to the mass, that is, whether the jury could avoid cumulating the evidence against all of the defendants and could make individualized guilt determinations." *Id.* (internal quotations marks omitted).[4] Ultimately, the

---

[4] The Government insists that Defendants must show "compelling prejudice" to merit severance under Rule 14(a). *See* ECF No. 333 at 19. This "heavy burden" is only required, however, when attempting to show that a district court abused its discretion in denying a Rule 14(a) motion for severance. *See, e.g.*, *Knowles*, 66 F.3d at 1158 ("To demonstrate that the district

"decision whether to grant a severance lies within the district court's sound and substantial discretion." *United States v. Mosquera*, 886 F.3d 1032, 1041 (11th Cir. 2018).

Citing the complexity of this case, Defendants argue they face potential prejudice in the form of a confused jury rendering an unreliable verdict. Emphasizing that the "presentation will involve dozens of witnesses, hundreds of documents, conflicting theories and convoluted evidence and law," Finch argues that "[i]t will be impossible for a jury to keep the ECS and [WorldClaim] allegations separate from the allegations" directed at him. ECF No. 325 at 12. Further, Finch notes that the risk for evidentiary confusion could necessitate frequent remedial charges to the jury, impeding the flow of the trial. *Id.* at 9. Anderson also cites the complexity of the case and the concern for evidentiary confusion or spillover. ECF No. 326 at 8.

The Government argues that Defendants' concerns are overstated. Pointing to the curative instruction the Court is set to deliver regarding the duplicitous charges in the defective indictment,[5] the Government insists that a similar "instruction

court abused its discretion, a showing of 'compelling prejudice' is required."). Otherwise, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

[5] In its order on the Government's motion for reconsideration, the Court explained how the duplicitous conspiracies charged in Count 1 would be treated: "Forcing the Government to elect— as it essentially already has—not to pursue the ECS or WorldClaim conspiracies, along with a jury

regarding *evidence* supporting those allegations . . . would be sufficient to ensure that the jury will reliably determine guilt or innocence as to each count and each Defendant." ECF No. 333 at 20.

While a close call, the Court finds that Finch has demonstrated sufficient prejudice to merit severance of Counts 17–25 from the rest of the charges. As the second superseding indictment spanning fifty-eight pages, twenty-six charges, and a multitude of characters would suggest, this is a complex case. In the winding set of allegations setting out the various schemes in the City of Lynn Haven, two stand out from the rest: the ECS and WorldClaim projects. Anderson plays a central role in all, but by the terms of the indictment, Finch plays little to no role in the ECS and WorldClaim projects. Anderson and Michael White's roles in both the ECS and WorldClaim projects as well as the other projects set out in the indictment are sufficient for initial joinder under Rule 8(b), but this minimal relevance does not outweigh the prejudice Anderson would face in a trial with these charges included.

Including the ECS and WorldClaim charges along with the charges focusing on the alleged Finch projects runs the risk of the jury viewing all the projects together as part of a single conspiracy run by Defendants to bilk the City of Lynn Haven of public funds. The Court has already rejected this overlapping conspiracy approach

---

instruction telling the Jury that Count 1 is limited to the 17th street, debris disposal, and rebuild conspiracy, is enough to diffuse Count 1's duplicitousness." ECF No. 323 at 8.

in finding Count 1 of the second superseding indictment duplicitous, *see* ECF No. 293. To minimize any more potential confusion for a jury, the fix is simple: the charges directed at Anderson alone will be tried separately from the remaining charges.

Despite the Government's insistence that yet another curative instruction would allay Finch's concerns, this Court is not convinced. With one curative instruction already on deck—and a bevy of instructions yet to come given the array of charges directed at Defendants—adding yet another curative instruction would likely serve to make this morass even more difficult for a jury to comprehend. Piling instruction upon instruction for a jury to consider along with an already complex factual and legal narrative suffers from diminishing returns. Further, the benefit to judicial economy presented by a joint trial is minimized where, as here, the Court would have to continuously monitor and instruct the jury to discern between overlapping allegations and evidence. Adding another instruction regarding the evidence presented as to the ECS and WorldClaim projects would do little to ensure the jury is able to make an independent assessment of each Defendant's guilt or innocence while exacerbating the complexity of this case.

III

While properly joined under Rule 8(b), the Court finds that the prejudice Finch would suffer from the inclusion of Counts 17–25 in a joint trial with Anderson merits severance under Rule 14(a).

Accordingly,

**IT IS ORDERED**:

1. Finch's motion to sever, ECF No. 325, is **GRANTED**.

2. Anderson's motion to sever, ECF No. 326, is **DENIED** as moot.

**SO ORDERED on September 16, 2022.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**

12